# In the United States Court of Federal Claims

| | |
|---|---|
| GRAVENSTEIN 116, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 25-997<br><br>Filed: January 30, 2026 |

*Christina Tallulah Lanier* of Brotman Law, San Diego, CA, for Plaintiff.

*Joseph R. Longenecker* of the United States Department of Justice, Tax Division, Washington, D.C., for Defendant. With him on the briefs was *Jason Bergmann* of the United States Department of Justice, Tax Division, Washington, D.C.

### MEMORANDUM AND ORDER

Federal tax law denies any "deduction or credit" to a taxpayer whose business "consists of trafficking in controlled substances." *See* I.R.C. § 280E (Section 280E bar). Marijuana is a controlled substance for purposes of the Section 280E bar. *See* 21 U.S.C. § 812. Plaintiff Gravenstein 116, LLC (Gravenstein or Plaintiff), which operates cannabis dispensaries in California, argues it is entitled to the refundable portion of the Employee Retention Credit (ERC), I.R.C. § 3134, for the first and second quarters of 2021. Plaintiff acknowledges that its business is subject to the Section 280E bar and accordingly that it cannot claim any "deduction or credit." Nevertheless, Plaintiff contends that the refundable portion of the Employee Retention Credit is not a tax credit subject to Section 280E of the Internal Revenue Code. Defendant United States (Defendant) moves to dismiss this action pursuant to Rule 12(b)(6). Defendant contends that Section 280E's prohibition applies to the refundable portion of the Employee Retention Credit,

1

barring Plaintiff from eligibility for the tax credit as Plaintiff's business consists of selling marijuana. Defendant is correct. For the reasons stated below, Section 280E's anti-trafficking bar squarely applies to the Employee Retention Credit, including the refundable portion of the credit. As a trafficker of a federally controlled substance, Plaintiff is ineligible to receive this tax credit. Accordingly, Defendant's Motion to Dismiss (ECF No. 6) is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

## BACKGROUND

### I. Plaintiff's Marijuana Business

Plaintiff alleges that in 2020, when the coronavirus (COVID-19) pandemic began, Plaintiff operated three cannabis dispensaries in California, operating under the name "Solful." ECF No. 1 (Complaint or Compl.) ¶ 26. Plaintiff does not claim to have any other line of business besides selling marijuana. *See id.* Plaintiff claims that for nearly two years—through most of 2020 and all of 2021—state and local health departments issued orders that "significantly limited" Plaintiff's ability to engage in commerce. *Id.* ¶¶ 32–66. Plaintiff alleges that during this time, it had to transition from in-person retail operations to "almost exclusively" curbside pickup orders. *Id.* ¶ 70. Plaintiff further alleges that it adopted pandemic safety practices that increased costs and blunted output. *Id.* ¶ 72.

### II. The Employee Retention Credit

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). P.L. 116-136, 134 Stat. 281. The CARES Act was one of several laws that Congress passed in the spring of 2020 to address the economic impacts of COVID-19. *See* Margot Crandall Hollick, Cong. Rsch. Serv., *The Coronavirus Aid, Relief, and Economic Security Act*

*(CARES) Act—Tax Relief for Individuals and Businesses* 1 (2020).  The CARES Act included the Employee Retention Credit (ERC), a refundable tax credit[1] that subsidized employers who were forced to close or suspend operations due to COVID-19-related public health orders.  P.L. 116-136 § 2301, 134 Stat. 281, 347–51 (CARES Act § 2301) (codified, as amended, at 26 U.S.C. (I.R.C.) § 3134).  Using the ERC, eligible employers can reduce the amount paid in employment taxes by 70% of the amount paid to employees during the pandemic-related shutdowns.  I.R.C. § 3134(a).  If the credit exceeds the amount of employment taxes paid, employers can claim the difference as a cash refund:

> **(a) In general.**--In the case of an eligible employer, there shall be allowed as a credit against applicable employment taxes for each calendar quarter an amount equal to 70 percent of the qualified wages with respect to each employee of such employer for such calendar quarter.
>
> **(b) Limitations and refundability.**—
>     **(1) In general.--** . . .
>     **(2) Credit limited to employment taxes.**--The credit allowed by subsection (a) with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132) on the wages paid with respect to the employment of all the employees of the eligible employer for such calendar quarter.
>     **(3) Refundability of excess credit.**--If the amount of the credit under subsection (a) exceeds the limitation of paragraph (2) for any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b).

I.R.C. § 3134(a)–(b).

---

[1] "[R]efundable tax credit programs are structured to create the legal fiction that recipients make 'overpayments' on their taxes, thereby entitling them to the resulting tax 'refunds,' as a mechanism for achieving certain social policy goals."  *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (citing *Sorenson*, 475 U.S. at 864).  "Most tax credits can reduce your tax only until it reaches $0. Refundable credits go beyond that to give you any remaining credit as a refund."  *See Refundable Tax Credits*, IRS, https://www.irs.gov/credits-deductions/individuals/refundable-tax-credits.

The ERC is only available for wages paid before October 1, 2021. I.R.C. § 3134(n). Generally, eligible employers qualify for the ERC if their operations were "fully or partially suspended . . . due to orders from an appropriate governmental authority due to the coronavirus disease 2019." *Id.* § 3134(c)(2)(A)(ii)(I). Alternatively, an employer qualifies for the Employee Retention Credit if its gross receipts during a quarter were "less than 80 percent of the gross receipts" of the same quarter in 2019. *Id.* § 3134(c)(2)(A)(ii)(II). The CARES Act grants the Secretary of the Treasury of the United States (Treasury Secretary), whose purview includes the Internal Revenue Service (IRS), the ability to issue regulations and forms to implement the ERC. *Id.* § 3134(m). The ERC does not specify a suspension of any rules related to a taxpayer's general eligibility to claim credits or deductions. *See id.* § 3134.

### III. Procedural History

Plaintiff argues that it is eligible to claim the ERC for the first and second quarters of 2021 because it paid qualifying wages and was harmed by COVID-19-related shutdowns. Compl. ¶¶ 81, 93. Plaintiff claims that it met all requirements to claim the refundable ERC during that time period. *Id.* ¶¶ 81, 93.

Plaintiff states that on or about May 10, 2021, it filed its original Form 941 for employment taxes for the first quarter of 2021 and that it "has no outstanding employment tax liability for Q1 2021." Compl. ¶¶ 76, 77. Plaintiff also states that on August 7, 2024, it filed a Form 941-X—an amendment to its previous Form 941—claiming a refund for the ERC for the first quarter of 2021. *Id.* ¶ 79. Plaintiff avers that it paid qualifying wages of $215,408.84 in that quarter and contends that it was entitled to a refundable ERC of $150,786.19. *Id.*

Additionally, Plaintiff states that on or about August 9, 2021, it filed its original Form 941 for employment taxes for the second quarter of 2021, and that it "has no outstanding employment

4

tax liability for Q2 2021." Compl. ¶¶ 88, 89.  Plaintiff states that it filed a Form 941-X claiming a refund for the ERC for the second quarter of 2021 on August 7, 2024.  *Id.* ¶ 91.  Plaintiff claims that it paid qualifying wages of $244,614.37 in that quarter, and accordingly that it was entitled to a refundable ERC of $171,230.06.  *Id.*

On June 13, 2025, Plaintiff filed this suit seeking a tax refund, based upon its alleged entitlement to the ERC, for both the first and second quarters of 2021, totaling $322,016.25, plus interest.  *See* Compl. at 14.  Plaintiff contends that the IRS failed to adjudicate Plaintiff's refund claim for either the first quarter or second quarters of 2021 within six months of receipt.  *Id.* ¶¶ 83, 95.

On August 15, 2025, Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6) on the basis that Plaintiff, as a business subject to the Section 280E bar, is ineligible to claim the refundable portion of the ERC.  *See* ECF No. 6 (Motion to Dismiss or Motion) at 1.

## STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "The Court of Federal Claims may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)); *see* Rule 12(b)(6) of the Rules of the Court of Federal Claims (Rules) (allowing a party to assert the Complaint's "failure to state a claim upon which relief can be granted" as a defense).

5

At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)). The Court, however, need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

## DISCUSSION

Resolution of this Motion turns on one question of law: whether Internal Revenue Code Section 280E prevents a business "trafficking in controlled substances" from claiming the refundable portion of the Employee Retention Credit. As noted, Plaintiff acknowledges that it traffics in controlled substances and is therefore covered by Section 280E's prohibition on claiming any deduction or credit; however, it nevertheless contends that it is still eligible to claim the ERC. *See* ECF No. 9 (Response) at 2 ("Plaintiff's status, under current federal law, as a business 'trafficking in controlled substances' should not preclude it from claiming ERCs for the first and second quarters of 2021.").

Section 280E prevents certain businesses from taking tax deductions or credits in particular circumstances:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

I.R.C. § 280E. *see N. Cal. Small Business Assistants, Inc. v. Comm'r*, 153 T.C. 65, 73 (2019) ("'No deduction or credit shall be allowed.' Congress could not have been clearer in drafting this

6

section of the Code." (cleaned up)).  This statute enacts a "federal public policy against the allowance of business expenses for certain drug-trafficking activity," including the sale of marijuana.  *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1196 (10th Cir. 2019).  If, as Defendant contends in its Motion, Section 280E applies to the ERC, then Plaintiff is ineligible for the ERC tax credit and will be owed no funds in this action as a matter of law.  Mot. at 2.  The parties note that one other court has considered the issue and determined that Section 280E applies to the ERC.  Mot. at 3; Resp. at 3–4;  *see Receivership Est. of Solstice Grp., Inc. v. United States*, No. 2:24-cv-01522, 2025 WL 2988841, at *2 (W.D. Wash. May 9, 2025).  Plaintiff raises an argument not argued or considered in that prior case: "that at least the refundable portion of the ERC is not a deduction or credit for taxes at all."  Resp. at 4.  The Court concludes that, to the contrary, the Employee Retention Credit, including its refundable portion, is a tax credit, which Section 280E unequivocally bars Plaintiff from claiming.

> **I.    Application of Section 280E to the ERC**

To determine whether the ERC is a tax "credit," the Court begins with the text of the statute. *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022) ("As always, we begin with the text.").  "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 474 (2015).  When considering whether the language is plain, "[the Court] must read the words in their context and with a view to their place in the overall statutory scheme."  *Id.* (quotations omitted); *see also West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022).  Words that are used multiple times in the same statute have the same meaning each time in the absence of a contrary legislative intent.  *See Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (cleaned up)); *Mil.-*

7

*Veterans Advocacy v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1147 (Fed. Cir. 2021) ("[I]t is a well-established canon of statutory construction that Congress is presumed to have intended for identical words used in different parts of the same act to have the same meaning." (cleaned up)); *Libbey Glass v. United States*, 921 F.2d 1263, 1265 (Fed. Cir. 1990) ("[T]he presumption of identical meaning readily yields to the controlling force of the circumstance that the words, though in the same act, are found in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent." (cleaned up)).

      The text of the Internal Revenue Code (I.R.C. or Code) here is unambiguous: the ERC is a tax credit. The Code unequivocally labels the ERC as "a credit." I.R.C. § 3134(a) ("[T]here shall be allowed as a credit . . ."). The Code describes the refundable portion of the ERC as one part of this "credit." *Id.* § 3134(b)(2) ("If the amount of the **credit** under subsection (a) exceeds the limitation of paragraph (2) for any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." (emphasis added)). The same word is used in Section 280E: "credit." *Id.* § 280E ("No deduction or credit . . ."). Plaintiff does not raise any evidence, and the Court can find none, that the term "credit" in the Internal Revenue Code differs in meaning when describing the ERC or the Section 280E bar. *See* Resp. Indeed, the section of the Code addressing the ERC does not provide a separate definition of "credit" that would indicate a different definition than elsewhere in the Code. *See* I.R.C. § 3134(c) (providing definitions specific to the ERC). Accordingly, as it is evident that the term "credit" has the same meaning in the ERC as in the rest of the Internal Revenue Code, Section 280E's bar on eligibility for tax credits must be read to encompass the ERC. *See Sorenson*, 475 U.S. at 860; *Mil.-Veterans Advocacy*, 7 F.4th at 1147; *A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[A] word or phrase is presumed to bear the same meaning throughout a text."); *id.* at

8

172 ("The presumption of consistent usage applies also when different sections of an act or code are at issue."); *see also ERC Today LLC v. McInelly*, 782 F. Supp. 3d 721, 726 (D. Ariz. 2025) ("The ERC is a tax credit[.]").

 II.   **Plaintiff's Structural Argument**

Plaintiff further contends that even if the ERC is a tax credit, the refundable portion of the ERC is not a tax credit due to its structure as a refundable credit. Specifically, Plaintiff argues that "while the *form* of the ERC is that of a tax credit, the *substance* of the amounts in excess of an employer's tax liabilities is that of a non-tax refund of wages paid." Resp. at 3 (emphasis in original). Plaintiff characterizes the ERC's refundable portion as a subsidy for employment, rather than a tax credit. *Id.* at 5. Plaintiff cites no authority for the purported "meaningful distinction" it asserts between the refundable ERC and other credits. *See* Resp. at 4 ("[T]his Court *should* consider the meaningful distinction between the ERC, refundable portion[s] of which acts as a non-tax refund of wages paid by an eligible employer, and the types of credits and deductions section 280E clearly prohibits." (emphasis in original)).

Contrary to Plaintiff's argument, it is well-established that refundable tax credits are still tax credits subject to restrictions in the Internal Revenue Code. Indeed, the Supreme Court considered this issue in *Sorenson v. Secretary of Treasury*, which involved the applicability of overpayments arising due to the refundable Earned Income Credit (EIC) to a law that permitted the IRS to intercept tax refunds of individuals who had failed to make child-support payments. *See Sorenson*, 475 U.S. at 853–54. The Court held that the refundable credit was subject to the intercept law because the Code defined the refundable EIC as an "overpayment" of taxes and the intercept law applied to any "overpayment." *Id.* at 859 ("The refundability of the earned-income credit is thus inseparable from its classification as an overpayment of tax."). The Court specifically

9

rejected an argument that the refundable nature of the EIC changed the definition of "overpayment"; instead, the Court held that the structure of a refundable credit did not change the meaning of words in the Code. *Id.* at 863 ("[J]ust as eligibility for an earned-income credit does not depend upon an individual's actually having paid any tax, the Code's classification of the credit as an 'overpayment' to be refunded is similarly independent of the individual's actually having made any payment."). Here, Plaintiff advances nearly the same argument the taxpayers in *Sorenson*: claiming that the word "credit" means something different in the ERC because the ERC is structured as a refundable credit. *See* Resp. at 4. However, the Internal Revenue Code does not discriminate between a refundable credit and other credits, and Plaintiff makes no credible, supported argument to the contrary. *Sorenson*, 475 U.S. at 863.

Plaintiff's contention that the ERC is somehow structurally different than other tax credits because it supports a policy of subsidizing employment similarly fails. *See* Resp. at 4. Indeed, the United States Court of Appeals for the Second Circuit rejected a similar structural argument concerning the EIC in *Israel v. United States*. *See Israel v. United States*, 356 F.3d 221, 223–24 (2d Cir. 2004). There, taxpayers argued that a timeliness requirement applicable throughout the Internal Revenue Code should not apply to the refundable EIC because the refundable EIC "is essentially not a tax refund, but rather 'an antipoverty mechanism' through which the government subsidizes low-income families." *Id.* The *Israel* court, citing *Sorenson*, held that the Code does not make such a distinction, and held that the relevant term had the same meaning for refundable credits as in other parts of the Code. *Id.* at 224. Here, Plaintiff argues that the ERC purportedly is structurally a "non-tax refund" and is thus beyond the reach of the Section 280E bar. Resp. at 4. Like the *Israel* taxpayers, Plaintiff cannot identify any authority for this asserted distinction in the Code. *Id.* Thus, the same result applies here as in *Israel*: terms used in provisions elsewhere

10

in the Internal Revenue Code retain their same meaning when applied to a refundable credit even where it supports a social policy, like the ERC.  *See Israel*, 356 F.3d at 223–24; *Sorenson*, 475 U.S. at 864.  Accordingly, the term "credit" in the ERC has the same meaning in the Code as the term "credit" in Section 280E and as noted above, the Section 280E bar thus applies to the ERC, including any refundable portion of the credit.

### III.  Plaintiff's Policy Argument

Finally, Plaintiff seeks to salvage its argument with an appeal to the ERC's policy aims.  *See* Resp. at 5.  Where statutory text and structure are clear, the Court will not engage in a purposivist analysis that undermines the statute.  *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop." (internal citations omitted)).  The Supreme Court in *Sorenson* rejected an argument that public policy considerations prevented the application of provisions of the Internal Revenue Code to refundable credits.  *See Sorenson*, 475 U.S. at 865.  There, taxpayers argued that the law requiring the interception of tax refunds of people who miss child support payments "should be read narrowly to avoid frustrating the goals of the earned-income credit program."  *See id.* at 864.  The Supreme Court rejected this argument as beyond the role of the courts to consider: "[t]he ordering of competing social policies is a quintessentially legislative function."  *Id.* at 865.  Similarly, here, Plaintiff argues that the ERC's social-support purposes should override Section 280E's bar on providing tax credits to businesses engaged in drug trafficking.  Resp. at 5.  As in *Sorenson*, the Court will not consider policy arguments that seek to undermine the unambiguous text of Section 280E.  *See Sorenson*, 475 U.S. at 865.

Furthermore, even if the Court were to consider Plaintiff's policy arguments, those arguments would fail to support Plaintiff's claim. For example, Plaintiff contends that the ERC's purpose was "keeping Americans employed and paid during a national public health emergency," and that Plaintiff fulfilled that purpose by retaining employees and accordingly should be eligible for the refundable portion of the tax credit. Resp. at 5. Plaintiff attempts to distinguish its own business from that of an "illegal cocaine dealer" whose business is illegal under state law and argues that its business is more deserving of federal support than the cocaine dealer. *Id.* ("Plaintiff actually contributed to the American economy, at a significant expense no less.").

Even if the Court were to engage with Plaintiff's analysis, which it does not, Plaintiff's distinction between itself and the "illegal cocaine dealer" has no basis in the law. *See* Resp. at 5. Section 280E does not distinguish between different types of drug traffickers but rather applies equally to any business that "consists of trafficking in controlled substances."[2] I.R.C. § 280E. Plaintiff acknowledges that it qualifies as such a business "under current federal law," which is the law that this Court applies.[3] *See* Resp. at 2. Plaintiff does not identify any other relevant authority

---

[2] In fact, insofar as there is a distinction between Plaintiff, as a seller of marijuana, and illegal cocaine dealers, the distinction does not reflect well upon Plaintiff. The Section 280E bar defines "controlled substances" as those drugs listed in Schedules I and II of the Controlled Substances Act, 21 U.S.C. § 812. I.R.C. § 280E. Marijuana is currently listed on Schedule I, which is more restrictive than Schedule II, on which cocaine is listed. *See* 21 U.S.C. § 812.

[3] On December 18, 2025, President Trump issued an Executive Order directing the Department of Justice to accelerate the process to reschedule marijuana to Schedule III under the Controlled Substances Act. *See* Exec. Order No. 14,370, *Increasing Medical Marijuana and Cannabidiol Research*, 90 Fed. Reg. 60,541 (Dec. 18, 2025). However, the Department of Justice has yet to publish a final rule reclassifying marijuana. *See* Drug Enforcement Agency, *Schedules of Controlled Substances: Rescheduling of Marijuana*, https://www.regulations.gov/docket/DEA-2024-0059 (last accessed Jan. 28, 2026). This Court must "apply the law in effect at the time it renders its decision," and marijuana remains on Schedule I, as it did in 2021, the tax year at issue in this action. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994); *see also Bradley v.*

12

suggesting that the ERC grants special treatment to drug traffickers who pay their employees or contribute to the economy.[4]  *See* Resp. at 5.  Congress did not grant this Court the authority to weed through different types of trafficking and determine that only some are subject to Section 280E's bar based on policy rationales.  *See High Desert Relief*, 917 F.3d at 1196.  Accordingly, this Court declines Plaintiff's policy-based invitation to engage in judicial engraftment of an unambiguous Code.  Plaintiff cannot escape the conclusion that, at least for purposes of Section 280E, it traffics in federally illegal drugs and thus is not eligible to claim the ERC in any regard.

\* \* \* \* \*

---

*Sch. Bd. Of Richmond*, 416 U.S. 696, 711 (1974); *Doyon v. United States*, 58 F.4th 1235, 1245 (Fed. Cir. 2023).

[4] Plaintiff cites Congressional testimony from years after the ERC was passed to divine the statute's purpose.  *See* Resp. at 5.  This citation cannot help Plaintiff: "Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

13

## **CONCLUSION**

Section 280E of the Internal Revenue Code applies to the refundable ERC created in the Coronavirus Aid, Relief, and Economic Security Act, prohibiting a business whose "trade or business . . . consists of trafficking in controlled substances" from claiming this tax credit. I.R.C. § 280E. As Plaintiff, which runs a business selling marijuana, acknowledges that its business "traffic[s] in controlled substances," it cannot claim the ERC, including its refundable portion, as a tax credit. *See* Resp. at 2. Plaintiff's claim that it is owed a tax refund therefore fails as a matter of law. Accordingly, for the reasons stated above, the Court **GRANTS** Defendant's Rule 12(b)(6) Motion to Dismiss (ECF No. 6) and **DISMISSES** Plaintiff's Complaint. The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

January 30, 2026
Washington, D.C.